the judgment non obstante was warranted by the record as presented.

Judgment affirmed.

## FULTON v. METZGAR.

PER CURIAM:

This case is identical with Fulton v. Peters, supra, in everything.

Judgment affirmed.

---

## GEORGE BEECH v. LIVE-STOCK INS. ASS'N.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF WESTMORELAND COUNTY.

Argued October 7, 1890—Decided November 3, 1890.

(a) In an action against a live-stock insurance company, incorporated under the act of May 1, 1876, P. L. 53, a supplement to the act of April 4, 1873, P. L. 20, the summons was served upon the president of the company, at its principal office in a county other than that where the suit was brought, and by the sheriff of the latter county:

1. The service being held sufficient, under the act of April 24, 1857, P. L. 318, the defendant appeared generally, and, on trial, the court below ruled that the insurance being upon a specific thing, the death of the horse insured, a notice of the death, given a few days thereafter, made subsequent formal and detailed proofs unnecessary unless requested by the company. Judgment for the plaintiff affirmed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 42 October Term 1890, Sup. Ct.; court below, No. 87 November Term 1887, C. P.

On September 12, 1887, George Beech brought assumpsit against the Farmers' & Breeders' Mutual Live-stock Insurance Association, upon a policy, dated March 6, 1886, insuring the plaintiff in the sum of $500 against the loss of a certain horse by death between January 15, 1886, and January 15,

## Statement of Facts.

1889. On September 17th, the summons was served upon the president of the defendant company at Butler, Pa., the place of its principal office.

The plaintiff having filed a statement of claim, with a copy of the policy in suit, on motion of the defendant company, appearing de bene esse, a rule was granted to show cause why the service should not be set aside, for the reason that no act of assembly authorized a service of the summons in Butler county. On October 29th, after argument, the motion was denied, and the defendant company required to appear and answer; exception.

On November 12, 1887, the defendant company filed the affidavit of its president, with a copy of the company's charter, the latter showing that the company was incorporated on September 28, 1883, by letters patent of the governor, under the provisions of the act of May 1, 1876, P. L. 53, a supplement to the act of April 4, 1873, P. L. 20; whereupon a motion was made for a re-hearing of the motion to set aside the service, on the ground that the defendant company was not incorporated by the legislature and was not a foreign insurance company. The motion for a re-hearing being allowed, after argument thereof, the court again refused the defendant's motion, citing Quinn v. Fidelity Ass'n, and ruling that the service was authorized by the act of April 24, 1857, P. L. 318; exception.[1 to 4]

The defendant company then pleaded to issue.

At the trial on December 3, 1889, the policy in suit was shown, containing the following provision:

" 5. The assured under this policy, sustaining loss by death, shall give immediate notice in writing to this association at their office in Butler, Pa., and within thirty days thereafter render a particular account of said loss; stating whether any and what other insurance was made covering the property above described, giving copies of the written portions of all policies thereon, the actual cash value of the animal or animals on which loss is claimed, and the interest or title of the assured and all others therein; he shall also state the age of the animal or animals, and the purpose for which such animals were used, and the cause of death." . . . .

It was shown that the horse died on April 1, 1887, and evidence was given as to notice thereof and proofs of loss, indicated in the charge by the court below.

### Charge of Court below.

At the close of the testimony the court, HUNTER, P. J., charged the jury in part as follows:

Was there then any notice of loss given to the company, and proof of the same within thirty days; and did the company do anything within that time that would lead to the inference that the plaintiff would not be held to a strict compliance with the conditions or provisions of the policy which we have read in your hearing?

To be brief, in this regard, we call your attention to the testimony of the plaintiff himself, and that of 'Squire Metzger, that after the horse died the company was notified through the mails, and that a blank proof of loss in proper form to make out the proof was requested of the company in the same manner; that some proof of loss of some kind was made out and mailed to the company, and subsequently, as we recall the testimony, a blank proof of loss was made out and also, if we remember correctly, sent by mail to the company. The correspondence between the plaintiff and the secretary of the company and the attorney of the company is also before you and this you will examine for yourselves. The evidence does not show a strict compliance with the provisions of the policy; but, as we have said, we think there is sufficient proof to submit the question of fact as to whether the plaintiff reasonably complied with the contract on his part; whether he so complied, under all the circumstances and facts which have been developed in evidence, as would in the eye of the law be a sufficient compliance with this part of his contract.

Now, in this regard the loss was an entire loss. The law is, as to the burning of a building, the entire destruction by fire of a building, that if notice be promptly given of the loss, further proof of loss is not necessary. This does not apply as a rule to personal property, if at all; it surely does not apply to personal property which may be composed of a number of items, when articles are removed and like articles take their place, as in the case of grain in a barn or goods in a store. [I am unable now to say whether this question as to whether it applies at all to personal property has ever been adjudicated; but, taking the law as given to us in regard to the burning of buildings, where it is an entire loss, where there is nothing left from the devouring flames, the whole building swept away,

### Charge of Court below.

reasoning by analogy from cases of that kind which have been adjudicated, we believe that where there is one article of personal property, specific and identical, insured for a certain round sum, the same rule of law would apply there and remove very largely, if not entirely, the necessity of any further proof of loss being made, except to give notice to the company that there was an entire loss; that the horse was dead.] [5]

The plaintiff requests the court to charge the jury:

1. The uncontradicted evidence, in the case, is that the preliminary notice required was given by the plaintiff to the defendant company through the mails, a few days after the death of the horse which was insured by the defendant company, which was in fulfilment of the requirements of the policy, the loss being a total and entire loss, which notice under the law took the place of the proofs of loss.

Answer: If the evidence satisfies you of the fact that notice was given the defendant company of the death of the horse, within the time, the same would be notice of an entire loss. Where such preliminary notice is given, in cases of the destruction of buildings by fire, further proof of loss would be unnecessary, unless requested by the company. This rule, however, does not apply to personal property, especially if the personal property consists of different items. But, as to the case now on trial, the insurance was upon a particular, specific and identical thing; and we think the same rule will apply as in cases of a building, and we do so instruct you as requested in the conclusion of the point.[6]

—No exceptions were taken by the defendant to the charge, or to the answers to points.

The jury returned a verdict for the plaintiff for $572.83. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, specifying inter alia, that the court erred:

1–4. In refusing defendant's motion to set aside the service.[1 to 4]

5. In the portion of the charge embraced in [ ] [5]

6. In the answer to plaintiff's point.[6]

*Mr. W. H. Klingensmith* (with him *Mr. J. N. Galbreath*), for the appellant.

Syllabus.

As to the service of the writ, counsel cited: Act of April 24, 1857, P. L. 318; act of April 8, 1868, P. L. 70; Quinn v. Fidelity Ass'n, 100 Pa. 382. As to the failure to supply proofs: Beatty v. Insurance Co., 66 Pa. 9; Lycoming Ins. Co. v. Schollenberger, 44 Pa. 259; Wood on Insurance, § 416.

*Mr. W. H. Young, Mr. John F. Wentling* and *Mr. D. A. Miller*, for the appellee.

That the subsequent general appearance cured the service, if defective, counsel cited: Bolard v. Mason, 66 Pa. 140; Blair v. Weaver, 11 S. & R. 86; Skidmore v. Bradford, 4 Pa. 300. That the service was sufficient: act of April 24, 1857, P. L. 318; act of April 8, 1868, P. L. 70. That detailed proofs of loss were unnecessary: Lycoming Ins. Co. v. Schollenberger, 44 Pa. 259; Farmers' Ins. Co. v. Moyer, 97 Pa. 441; Susq. Ins. Co. v. Toy Co., 97 Pa. 424; Universal F. Ins. Co. v. Block, 109 Pa. 540; Beatty v. Insurance Co. 66 Pa. 9; Ben. F. Ins. Co. v. Flynn, 98 Pa. 627; American Ins. Co. v. Haws, 20 W. N. 370.

PER CURIAM:

Judgment affirmed.

---

## ESTATE OF J. B. CUNNINGHAM, DECEASED.

APPEAL BY H. G. WILSON ET AL. FROM THE ORPHANS' COURT OF WESTMORELAND COUNTY.

Argued October 7, 1890—Decided November 3, 1890.
[To be reported.]

| 137 | 621 |
| 195 | 79 |
| 137 | 621 |
| 28 SC | ²476 |
| 137 | 621 |
| 38SC | ⁴500 |
| 137 | 621 |
| f225 | ¹524 |
| 225 | ³526 |

1. The widow of a testator must make her choice between acquiescence in her husband's disposition of his property, and the assertion, in disregard thereof, of the rights which the law gives her; she cannot take both these courses or parts of each.
2. The necessity of making such a choice, and its effect, do not legally depend in any degree upon the quantum of benefits she receives or renounces under the will, nor upon the mention or omission of her name or the presence or absence of any provision for her therein.